**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
STEPHEN FLANAGAN, as a Trustee of the General
Building Laborers' Local 66 Vacation Fund, STEPHEN
FLANAGAN, as a Trustee of the General Building Laborers'
Local 66 Pension Fund, STEPHEN FLANAGAN, as a
Trustee of the General Building Laborers' Local 66
Welfare Fund, STEPHEN FLANAGAN, as a Trustee of
the General Building Laborers' Local 66 Annuity Fund,
STEPHEN FLANAGAN, as a Trustee of the General
Building Laborers' Local 66 Employer Cooperative and
Educational Trust Fund,  STEPHEN FLANAGAN, as a
Trustee of the General Building Laborers' Local 66
Greater NY Laborers' Employer Cooperative and
Educational Trust Fund, STEPHEN FLANAGAN,
as a Trustee of the General Building Laborers' Local 66
Training Program, STEPHEN FLANAGAN, as a
Trustee of the General Building Laborers' Local 66
New York State Health and Safety Fund, and
STEPHEN FLANAGAN, as Business Manager of General
Building Laborers' Local Union No. 66 of the Laborers'
International Union of North America, AFL-CIO,

                              Plaintiff,

                    - against -

ODESSY CONSTRUCTION CORP.,

                             Defendant.
-------------------------------------------------------------------X

                                            **REPORT AND**
                                        **RECOMMENDATION**

                                    CV 17-1040 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge**:

**I.    PRELIMINARY STATEMENT**

    Plaintiff Stephen Flanagan ("Plaintiff" or "Trustee") commenced this action against

Odessy Construction Corp. ("Odessy") in his capacity as fiduciary of eight employee benefit

plans.  *See generally* Complaint ("Compl.") [DE 1].  Odessy failed to answer or otherwise move

with respect to the Complaint.  As a result, Plaintiff has filed a Motion for Default Judgment

against Odyssey.  Motion for Default Judgment ("Pl.'s Mot.") [DE 12].  Judge Hurley referred

the motion to this Court for a Report and Recommendation "as to whether plaintiff has demonstrated that the allegations in the Complaint establish the defendants' liability such that the motion for default judgment should be granted, and, if so, to determine the appropriate amount of damages, costs, and/or fees, if any, to be awarded."  Electronic Order of June 6, 2017.  Based upon the applicable law, the information submitted by the Trustee, and the reasons stated below, the Court respectfully recommends to Judge Hurley that the motion for default judgment be GRANTED, in part, and DENIED, in part.

## II.    BACKGROUND

On February 24, 2017, the Trustee commenced this suit against Odessy in his capacity as fiduciary of eight employee benefit plans.  *See generally* Compl.  According to the Complaint, Odessy is a for-profit domestic corporation engaged in the building and construction industry as a contractor in Nassau and Suffolk Counties.  *Id*. ¶ 7.  Odessy executed a Collective Bargaining Agreement ("CBA") with General Building Laborers' Local Union No. 66 ("the Union").  *Id*. ¶ 8.  The CBA incorporates by reference the terms of the Agreements and Declarations of Trust of the Fringe Benefit Funds ("Declarations of Trust") (collectively with the CBA, "the Agreements") and designates the plaintiff Fringe Benefit Funds as third party beneficiaries.  *Id*.

The Complaint asserts that pursuant to the Agreements, Odessy is required to, among other things:

> (a) pay contributions to the Funds on behalf of its employees, at the rates and times set forth in the Agreements;
> (b) submit contribution reports to the Funds;
> (c) permit and cooperate with the Funds in the conducting of audits of its book and records; and
> (d) in the event the contractor fails to timely pay required contributions, it is obligated to pay
> > i.   interest from the date such delinquent contributions were due until the date of payment;

2

> > ii.  liquidated damages in the amount equal to the interest
> >       on the delinquent contributions; and
> > iii. all costs and attorneys' fees incurred by the Funds.

*Id*. ¶ 12.  The Complaint further states that Odessy is also obligated to pay Mason Tender Dues

to the Mason Tenders District Council for each hour worked by those participants.  *Id*. ¶ 8.

According to the Complaint, Shop Steward Reports for the period from July 18, 2011 to

September 23, 2012 reveal that Odessy failed to make contributions to the Fringe Benefit Trust

Funds in the total amount of $12,694.12.  *Id*. ¶ 17.  Odessy was notified of its delinquency but

has failed to pay any of the fringe benefit contributions owed.  *Id*. ¶ 20.  Section 515 of the

Employee Retirement Income Security Act ("ERISA") obligates employers to pay contributions

to the Funds in accordance with the terms and conditions of the Agreements.  *Id*. ¶ 13.

Moreover, the Agreements and Section 502 of ERISA provide that on a finding that an employer

has violated Section 515, the Funds shall be awarded the unpaid contributions, plus interest on

those contributions, liquidated damages, reasonable attorney's fees and costs, as well as such

other legal and equitable relief as the court deems appropriate.  *Id*. ¶ 15.  Plaintiff further seeks

judgment in accordance with Section 502(g)(2)(E) permanently enjoining Odessy from failing or

refusing to pay contributions it owes.  *Id*. at 9.

After the Complaint was filed, Odessy was served with process via personal service on

the New York State Secretary of State on March 8, 2017.  DE 6.  On December 6, 2013,

Plaintiffs filed a "Request for Certificate of Default" in light of Odessy's failure to file an answer

or otherwise move with respect to the Complaint.  DE 9.  The Clerk of the Court issued a

"Certificate of Default" against Odessy on May 16, 2017.  DE 10.

On June 5, 2017, Plaintiff filed a motion for entry of default judgment against Odessy. "Pl.'s Mot."[1]  The motion was served on Odessy by first class mail on June 8, 2017.  *See* Affidavit of Mailing attached as Exhibit D to Supplemental Response I ("Supp. Resp. I") [DE 20].   In his motion, the Trustee seeks an order directing Odessy to:  (1) pay all delinquent contributions due and owing under the CBA; (2) pay interest on those delinquent contributions pursuant to 29 U.S.C. Section 1132(g)(2)(B); (3) pay liquidated damages pursuant to 29 U.S.C. Section 1132(g)(2)(C) and (E); and (4) pay attorneys' fees and costs incurred in bringing this action pursuant to 29 U.S.C. Section 1132(g)(2)(D).  *See* Pl.'s Mot. at 2; *see also* Affidavit of Attorney William LaVelle ("LaVelle Aff.") included as Item 4 of Pl.'s Mot. [DE 12] ¶ 21.

Judge Hurley referred Plaintiff's Motion for Default Judgment to this Court for a Report and Recommendation as to whether the motion should be granted, and, if so, the relief to be granted.  *See* Electronic Order of June 6, 2017.  This Court issued two Orders directing Plaintiff to provide certain additional documentation and information in support of its pending claim for damages.[2]  *See* DE 13, 25.  The Court further directed that Plaintiff provide an affidavit from someone with first-hand knowledge who was responsible for making the calculations underlying the damages claim.  DE 18.  On January 5, 2018, Plaintiff filed a supplemental submission ("Supp. Resp. II") which included the Affidavit of Allen Marmor, Benefit Funds Manager, as well as various exhibits.  *See* DE 20.  On February 1, 2018, Plaintiff filed a second supplemental

---

[1]      Plaintiff's counsel filed a 12-page motion with a single exhibit attached.  That 86-page single exhibit [DE 12-1] is an amalgamation of a number of documents which are designated internally with exhibit letters.  Hereafter, these documents shall be identified by name and with the internal exhibit letter (e.g., DE 12-1A, DE 12-1B, etc.).

[2]      The Court requested additional documentation from Plaintiff's counsel on two occasions. These submissions are identified throughout as Supplemental Response I ("Supp. Resp. I") and Supplemental Response II ("Supp. Resp. II").

submission ("Supp. Resp. II") with further information requested by the Court.  DE 27.  Both

submissions were served on Defendant.  DE 21, 28.

### III.    LEGAL STANDARD

Fed. R. Civ. P. 55 establishes a two-step process for obtaining a judgment against a

defaulting party.  *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011); *City of*

*N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*,

420 F.3d 99, 104 (2d Cir. 2005)).  First, a plaintiff must obtain a notation of default indicating

that a party has "failed to plead or otherwise defend."  Fed. R. Civ. 55(a).  Second, upon

obtaining a notation of default, "a plaintiff must next seek a judgment by default under Rule

55(b)."  *New York v. Green*, 420 F.3d at 104.  The decision to grant a motion for default

judgment is left to the sound discretion of the district court.  *Cement & Concrete Workers Dist.*

*Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (quoting

*Finkel v. Romanowicz*, 577 F.3d 79, 88 (2d Cir. 2009)) ("Rule 55(b) commits this decision to the

sound discretion of the district court.").

"Once found to be in default, a defendant is deemed to have admitted all of the well-

pleaded allegations in the complaint pertaining to liability."  *Philip Morris USA Inc. v. 5 Bros.*

*Grocery Corp.*, No. 13-2451, 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) (citing

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992);

*Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y.1992)); *Krevat v. Burgers to*

*Go, Inc.*, No. 13-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing *Joe*

*Hand Promotions, Inc. v. El Norteno Rest. Corp*., No. 06-1878, 2007 WL 2891016, at *2

(E.D.N.Y. Sept. 28, 2007)) ("A default constitutes an admission of all well-pleaded factual

allegations in the complaint and the allegations as they pertain to liability are deemed true.").  A

default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Deckers Outdoor Corp. v. TKM Forest Hills, LLC*, No. 12-5986, 2014 WL 4536715, at *4 (E.D.N.Y. Sept. 11, 2014) (citing *Greyhound ExhibitGroup. Inc*., 973 F.2d at 158).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13-4358, 2014 WL 2169769, at *3 (E.D.N.Y. May 23, 2014) (quoting *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc*., No. 08-3168, 2009 WL 4929419, at *6 (E.D.N.Y. Oct. 6, 2009)) (internal quotation marks omitted), *report and recommendation adopted by* 2014 WL 2765793 (E.D.N.Y. Jun. 18, 2014)); *Bravado Int'l Grp. Merchandising Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). Rather, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases); *see Said v. SBS Elecs., Inc.*, No. 08-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) (The fact that a complaint remains unanswered will not suffice to establish liability on the plaintiff's claims since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading."), *adopted as modified on unrelated grounds*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010 ).

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default." *Krevat*, 2014 WL 4638844, at *5 (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170– 71 (2d Cir. 2001); *Enron Oil Corp.*, 10 F.3d at 96). "These factors are: (1) 'whether the

defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Id.* (quoting *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring Experts, Inc.*, No. 12-6317, 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted by* 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013)); *see, e.g.*, *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12-02067, 2013 WL 4039378, at *2 (E.D.N.Y. Aug. 7, 2013) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) (citing *O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007); *U.S. v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006)).

## IV.   DISCUSSION

### A.   Default Judgment

#### i.   *Willfulness*

When a defendant is continually and "entirely unresponsive," the defendant's failure to respond is considered willful.  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders Dist. Council*, 2003 WL 1960584, at *2).  Under the present facts, Odessy's failure to respond to the Complaint sufficiently demonstrates willfulness.  *See Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007).  Plaintiff has submitted an Affidavit of Service demonstrating that Odessy was duly served with the Summons and Complaint.  DE 6.  Odessy neither answered nor responded in any way to the Complaint, nor did they request an extension of time to respond, and the time to do so has expired.  In addition, Plaintiff provided the Court with an Affidavit of Service indicating that Odessy was served with

7

the Motion for Default Judgment by first class mail on June 8, 2017.  *See* Affidavit of Mailing attached as Exhibit D to Supp. Resp. I.  There is no indication that Odessy's failure to respond to the Complaint – despite being properly served – was anything but deliberate.  Odessy's failure to answer the Complaint and to respond to the instant motion demonstrates willfulness in accordance with Second Circuit case law.  *See S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998); *see also Indymac Bank*, 2007 WL 4468652, at *1; *DiPaolo*, 466 F. Supp. 2d at 482. Consequently, Plaintiff has established the first factor for entry of default judgment by demonstrating willfulness.

### ii.      *Meritorious Defense*

Turning to the next factor, the Court is unable to make a determination whether Odessy has a meritorious defense since no such defense has been presented to the Court.  *See Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Mason Tenders Dist. Council*, 2003 WL 1960584, at *2); *see also Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-46, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. March 12, 2012).  Although Odessy's default constitutes an admission of all the factual allegations set forth in the Complaint as they relate to liability, the Trustee must nevertheless demonstrate that the uncontested allegations set forth valid claims.  *See Said*, 2010 WL 1265186, at *2 (collecting cases)

As an initial matter, the Court notes that a number of the allegations in the Complaint have been pleaded on information and belief.  *See generally* Compl.  In general, "conclusory allegations based on information and belief" are insufficient to support a finding of default-based liability.  *J & J Sports Prods. Inc. v. Daley*, No. 06-238, 2007 WL 7135707, at *3–4 (E.D.N.Y. Feb. 15, 2007).  However, allegations on information and belief may be sufficient to hold a

8

defendant individually liable on a default judgment where such allegations state facts primarily within the defendant's knowledge. *See Joe Hand Promotions, Inc. v. Blais*, No. 11 Civ. 1214, 2013 WL 5447391, at *3 (E.D.N.Y. Sept. 10, 2013) (deeming admitted allegations pled on information and belief in default judgment context) (citing *Fong v. United States*, 300 F.2d 400, 409 (9th Cir. 1962) (finding allegations on information and belief sufficient to hold defendant individually liable on default judgment because they stated facts primarily within defendant's knowledge)); *see also Sexy Hair Concepts, LLC v. Sexy Hair Inc*., No. 12 Civ. 3937, 2013 WL 5460629, at *4 (E.D.N.Y. Sept. 30, 2013) (deeming admitted allegation on information and belief that defendant owned corporate entity and directed and controlled the activity of the business in default judgment context) (citing *Fong* 300 F.2d at 409; *CAMOFI Master LDC v. Riptide Worldwide, Inc*., No. 10 Civ. 4020, 2012 WL 6766767, at *12 n. 11 (S.D.N.Y. 2012) (allegations made on information and belief are "deemed admitted by virtue of Defendant's default")); *J & J Sports Prods*., 2012 WL 1356598, at *3, *adopted by* 2012 WL 1372250 (E.D.N.Y.2012) (deeming admitted facts pled on information and belief in a default judgment context).  Thus, where the facts pled on information and belief state facts primarily within the defendant's knowledge, as is the case here, such facts will be deemed admitted.

Accepting all allegations in the Complaint as true, the Court finds that Plaintiff has adequately stated a claim under ERISA.  Section 515 of ERISA requires employers to pay fringe benefit contributions pursuant to an effective collective bargaining agreement. 29 U.S.C. § 1145. This provision states, in pertinent part, that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

9

29 U.S.C § 1145.  Under § 502 of ERISA, 29 U.S.C. § 1132(a)(3), the trustees of a plan have the right to bring an action in federal district court to enforce an employer's duty under § 515.  *See Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 312-13 (2d Cir. 1990).

Here, Plaintiff alleges that Odessy, who was an employer as defined by ERISA, Compl. ¶ 6, entered into a CBA with the Union and failed to remit fringe benefit contributions to the Funds for the period running from July 18, 2011 through September 23, 2012.  *Id*. ¶¶ 8, 17. Under the terms of the CBA, Odessy was obligated, among other things, to: (i) pay contributions; (ii) submit contribution reports; and (iii) permit audits of their books and records.  *Id*. ¶ 12. Plaintiff further argues, upon information and belief, that Defendants "wrongfully and fraudulently diverted" monies that were supposed to be held in trust for the Funds.  *Id*. ¶ 11. These allegations are deemed admitted for purposes of the instant motion.  *See Fong*, 300 F.2d at 409; *Joe Hand Promotions*, 2013 WL 5447391, at *3; *Sexy Hair Concepts*, 2013 WL 5460629, at *4; *CAMOFI Master*, 2012 WL 6766767, at *12 n. 11; *J & J Sports Prods*., 2012 WL 1356598, at *3.  Thus, Plaintiff has sufficiently set forth the elements of a claim against Odessy for unpaid fringe benefit contributions and accompanying liability under 29 U.S.C. Section 1145. *See* 29 U.S.C. § 1145; *see, e.g., Innovative Disposal*, 2011 WL 1158444, at *2; *MMK Trucking*, 2010 WL 3619569, at *4.

### iii.    *Prejudice*

The last factor for the Court to consider is whether Plaintiff would be prejudiced if the motion for default judgment were to be denied.  Denying this motion would actually be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Mason Tenders*, 2003 WL 1960584, at

*3).  If a default judgment is not granted, Plaintiff will have no alternative legal redress to recover the losses the funds have sustained.  Since all three factors necessary to establish a default have been satisfied, the Court respectfully recommends to Judge Hurley that a default judgment be entered against Odessy.

### B.    Damages and Requested Relief

Although a party's default is viewed as "a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); Fed. R. Civ. P. 8(d)).  Therefore, once a party's default as to liability is established, a plaintiff still must prove damages.  *See Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. and Training Fund and Other Funds v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see also Gutman v. Klein*, No. 03-1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) (quoting *Flaks*, 504 F.2d at 707) ("'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"), *report and recommendation adopted* 2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010), *aff'd*, 515 Fed. Appx. 8 (2d Cir. 2013). The only question remaining, then, is whether Plaintiff has provided adequate support for the damages sought.  *See Gutman*, 2010 WL 4975593, at *1 (quoting *Bravado Int'l Group Merch Servs.*, 655 F. Supp. 2d at 189) (citing *Greyhound*, 973 F.2d at 158) ("The burden is on the plaintiff to establish its entitlement to recovery.") (internal quotation marks omitted).

Here, Plaintiff collectively seeks to recover damages in the amount of $19,462.00.  *See* Response II ¶ 7.  Specifically, Plaintiff requests that the Court award $12,652.77 in unpaid

contributions and dues, $1,993.69 in pre-judgment interest, $2,530.54 in liquidated damages, $1,750 in attorneys' fees, and $535 in costs. *Id.*; *see* CBA, Article 6 Section 6(f). The Court now assesses whether Plaintiff has adequately demonstrated that these damages are warranted.

### *i.   Unpaid Benefit Contributions & Dues*

When a judgment is entered in a plan's favor, the plan is entitled to recover the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(A); *see also* CBA, Article 6 Section 6(f)(A). Here, the Trustee seeks to recover unpaid contributions and dues amounting to $12,652.77 for the period running from July 18, 2011 through September 23, 2012. Supp. Resp. II [DE 27] ¶ 1. In support of Plaintiff's request, Plaintiff has submitted various documentation, including an affidavit from Allen Marmor, the Benefit Funds Manager. *See* Affidavit of Allen Marmor ("Marmor Aff.") [DE 20-9] ¶¶ 1, 2. In his capacity as Benefit Funds Manager, Marmor keeps records in the normal course of business regarding wages and fringe benefit contributions and he represents to the Court that he is fully familiar with the facts and circumstances of this case. *Id.* ¶ 1. According to Marmor, Shop Steward Reports are generated by appointed members of the Union known as Shop Stewards. Marmor Aff. ¶ 4. Under the CBA, a Shop Steward is required to be present at each union job and to keep track of the hours worked by each laborer. *Id.* The reports are "generally submitted" by the Stewards to the Funds on a weekly basis. *Id.* ¶ 5. When the hours reported in the Shop Steward Reports exceed the number of hourly benefit stamps actually purchased, the Funds generate delinquency spreadsheets, kept in the normal course of business, which reflect the amount due per laborer for a particular time period. *Id.* ¶ 9; *see* Operative Delinquency Spreadsheet [DE 20-2] annexed as Exhibit B to Supp. Resp. I.

Plaintiff has provided the Court with two Delinquency Spreadsheets. The first was submitted along with Plaintiff's Motion for Default Judgment, and the second, an amended

version, is attached as Exhibit B to Plaintiff's Supplemental Response I [DE 20-2] (the "Operative Delinquency Spreadsheet").  The Operative Delinquency Spreadsheet sets forth a total of $12,694.12 in delinquent contributions.  Operative Delinquency Spreadsheet; *see* Marmor Aff. ¶ 10.  This figure differs from the amount Plaintiff now seeks to recover ($12,652.77).  The variation arises from the application of slightly different contribution rates.  The Operative Delinquency Spreadsheet sets forth contribution rates which include an additional 10 cents for "Wall and Ceiling Members."  Supp. Resp. I ¶ 7.  Since "Wall and Ceiling Members" had not been referenced in any of Plaintiff's previous submissions, the Court requested that Plaintiff explain (1) why such an addition had been made, and (2) the authority for making that change.  DE 25.  In response to the Court's inquiry, Plaintiff stated that "based upon the oversight of not including a cause of action to recover the Fringe Benefit rate of $.10 per hour for the Association of Wall, Ceiling & Carpentry Industries, Inc. members, we are removing our claim for $41.35."  Supp. Resp. II ¶ 1.  As a result of this reduction, Plaintiff now seeks $12,652.77 in delinquent contributions.  Although the contribution rates set forth in the Operative Delinquency Spreadsheet include the additional 10 cents, the Court still finds the spreadsheet to be a helpful reference.

The Court will now consider whether the contribution rates applied (the rates set forth in the Operative Delinquency Spreadsheet minus 10 cents) are adequately supported by documentary evidence.  In this regard, Plaintiff provided the Court with a copy of the operative CBA, *see* Collective Bargaining Agreement ("CBA"), annexed as Exhibit A to Supp. Resp. I, and documents referred to as "Memoranda."  *See* Memoranda annexed as Exhibit E to Supp. Resp. I.  According to Plaintiff, "[e]ach Memoranda is mailed to the Employer before the date of the Fringe Benefit rate increase as a reminder of the Fringe Benefit rate increase in the operative

CBA and to explain how the hourly wage is allocated.  The Memorandums are binding on the Employer by virtue of the Employer being a signatory to the CBA."  Supp. Resp. II ¶ 4.

With regard to the CBA, Article Six, Section 1 is the relevant provision.  *See* CBA at 32.  It states that effective July 1, 2011 Odessy was obligated to pay its employees a wage rate of $30.50 an hour and a total fringe benefit rate of $26.31.  *See* CBA, Article Six, Section 1(a).  The fringe benefit rate set forth in the Operative Delinquency Spreadsheet, however, is $28.35.  *See* Operative Delinquency Spreadsheet.  Although this rate is not expressly stated in Article Six Section 1 (a), it is consistent with the rate set forth in the applicable Memorandum.  DE 20-5 at 1.  A review of that Memorandum shows that the difference between the two figures arose from the addition of $2.04 to the Fringe Benefit Package for "Dues Check Off."  *Id.*  The Court inquired whether Plaintiff could point to a provision in the CBA setting forth the Dues Check-Off figure.  DE 25.  In response, Plaintiff directed the Court to Article Six, Section 1(a) of the CBA which provides that "[w]ages include Building Laborers Dues and MTDC PAC Check-offs," and Article Six, Section 11(a), which states that the employer shall deduct $2.04 in dues from the wages of Building Laborers who authorize such deduction…"  *See* Article Six, Section 1(a); *see also* Article Six, Section 11(a); Supp. Resp. II ¶ 5.  Therefore, the $26.31 total fringe benefit rate set forth in Article Six, Section 1(a), plus the $2.04 in "Dues Check-Off" is consistent with the rate set forth in the applicable Memorandum and the rate applied by counsel in the Delinquency Spreadsheet (again, minus the 10 cents originally included).

Article Six, Section 1(a) of the CBA further provides that the wages and/or fringe benefit contributions shall be increased by $2.13 per hour effective January 1, 2012, by $2.16 per hour effective July 1, 2012, and by $.71 per hour effective July 1, 2013.  CBA, Article Six, Section 1(a).  These provisions are consistent with Plaintiff's representation that the "Fringe Benefit

14

package per hour fluctuated during the applicable time period."  Marmor Aff. ¶ 12; Supp. Resp. I ¶ 7.  The Marmor Affidavit and the Memoranda supplied by counsel set forth these fluctuating rates.  *See* Marmor Aff. ¶ 12; *see also* Memoranda [DE 20-6].  The Court tracked the increases in rates set forth in the Memoranda against the increases mandated by the CBA and finds that they are consistent.  To demonstrate, Article Six, Section 1(a) of the CBA provides that wages and/or fringe benefit contributions were increased by $2.13 per hour effective January 1, 2012.  The Memorandum effective January 1, 2012 sets forth a wage rate of $31.60 per hour and a Total Fringe Benefit Package rate of $29.49.  If one deducts the "Dues Check-Off" amount from the Total Fringe Benefit Package set forth in the applicable Memorandum, then the increase which took effect January 1, 2012, was, in fact, $2.13, the amount required by the CBA.  The Court demonstrates this point below:

| Effective Date: July 1, 2011 | Effective Date: January 1, 2012 |
|---|---|
|     $30.50 (wage rate) |     $31.60 (wage rate) |
| + | + |
|     <u>$26.31 (= $28.35-$2.04)</u> (fringe benefit) |     <u>$27.34 (= $29.49-$2.15)</u> (fringe benefit) |
|     $56.81 |     $58.94 |

|  |
|---|
|     $58.94 |
| —    <u>$56.81</u> |
|     **$2.13** |

Further, the subsequent increase mandated by the CBA for July 1, 2012 ($2.16) is also accurately reflected in the Memorandum, with effective dates July 1, 2012 to June 30, 2013.

Based on the above calculations, the rates set forth in the CBA are consistent with those provided in the Memoranda, and those that were applied by Plaintiff.

### ii.    *Interest on Unpaid Contributions*

In addition to unpaid contributions and dues, Plaintiff also seeks pre-judgment interest in the sum of $1,993.69 calculated through January 3, 2018.  *See* Supp. Resp. II ¶ 2.  Under 29 U.S.C. Section 1132(g)(2)(B), a plaintiff is entitled to interest on unpaid contributions at "the rate provided under the plan, or if none, the rate prescribed under section 6621 of Title 26."  *See Cement & Concrete Workers Dist. Council Welfare Fund v. Azzarone Contr. Corp*., No. 06 Civ. 2953, 2007 WL 2712314, at *3, n.4 (E.D.N.Y. Sept. 13, 2007).  Moreover, Article Six, Section 6(f)(B) of the CBA provides that Odessy is liable for the "interest on unpaid contributions determined by using the rate prescribed under Section 6621 of Title 26 of the United States Code."  Article Six, Section 6(f)(B), CBA.  Under Section 6621, the pre-judgment interest rate is the sum of the Federal short term-rate (which changes quarterly) plus three percentage points.  *See* 26 U.S.C. § 6621(a)(2), (b)(1).  In addition, such interest is to be compounded daily.  *See* 26 U.S.C. § 6622(a) ("In computing the amount of any interest required to be paid under this title ... such interest and such amount shall be compounded daily.").  For the July 18, 2011 through September 23, 2012 delinquency period, the average annual short-term interest rate, plus the additional three points mandated by 26 U.S.C. § 6621, fluctuated between 3% and 4%.  *See* Rev. Rul. 2014-11, 2014-14 I.R.B. 906 (2014), 2014 WL 988367.

In support of Plaintiff's request for pre-judgment interest, Plaintiff's counsel has submitted the following interest calculation, applying the rates prescribed in Section 6621 for each time period:

| Time Period | Interest Rate | Benefits Due | Interest Due |
|---|---|---|---|
| 7/18/11-7/24/11 | 4% | $155.93 | $23.56 |
| 1/23/12-6/30/12 | 3% | $412.86 | $60.42 |
| 8/13/12-9/23/12 | 3% | $12,083.98 | $1,909.71 |
| | | | **$1,993.69** |

*See* Supp. Resp. II ¶ 2.

Counsel points out that interest has been calculated from the last day of each respective period to [January 3, 2018], and has not been compounded annually.  LaVelle Decl. ¶ 9 ("for the purpose of this request for default judgment and due to this firm's lack of a sophisticated accounting computer program necessary to calculate interest on each unpaid contribution dollar as accrued, the interest is calculated from the last day of each respective period"); *see* Supp. Resp. ¶ 1 ("Please note this is simply interest only, not compound.").  Although counsel's calculation errs in favor of Odessy, the Court notes that courts in this District routinely adopt a party's interest calculation even though it yields a number that is lower than that to which the party is actually entitled.  *See Flanagan v. North Star Concrete Const., Inc*., No. 13 Civ. 2300, 2014 WL 4954615, at *9 (E.D.N.Y.2014); *see also DeLucia v. Gateway*, No. 10 Civ. 5705, 2011 WL 3511098, at *5 (E.D.N.Y. July 6, 2011) ("As plaintiffs are content to employ a simple methodology, thereby foregoing some potential interest owed, this Court sees no reason to do otherwise."), *report and recommendation adopted by* 2011 WL 3511051 (E.D.N.Y. Aug. 10, 2011); *DeLucia v. RTD Strategies, Inc*., No. 07 Civ. 3967, 2009 WL 346972, at *3 (E.D.N.Y. Feb. 4, 2009) ("Because Plaintiffs seek a simple, non-annual interest rate of 5.25% that is well below the annual rate that they are entitled under ERISA, the undersigned finds that there is an adequate legal basis to award plaintiffs with prejudgment interest [in the amount sought].").

17

The Court independently calculated the interest owed for each time period and the results are consistent with those put forth by Plaintiff. The Court notes that Plaintiff only recorded each figure up to two decimal places and did not round up. In the interest of consistency, the Court has utilized the same approach:

**Time Period: 7/18/2011-7/24/2011**

$I = P \times r \times t$

$P = \$155.93$   $r = 4\%$ per year $\rightarrow$ \$6.23 interest per year $\rightarrow$ 6.25/365 = .01 per day

.01 x (# of days between July 24, 2011 and January 3, 2018—2356) = **$23.56$**

**Time Period: 1/23/2012-6/30/2012**

$I = P \times r \times t$

$P = \$412.86$   $r = 3\%$ per year $\rightarrow$ \$12.38 interest per year $\rightarrow$ 12.38/365 = .03 per day

.03 x (# of days between June 30, 2012 and January 3, 2018—2014) = **$60.42$**

**Time Period: 8/13/2012-9/23/2012**

$I = P \times r \times t$

$P = \$12,083.98$   $r = 3\%$ per year $\rightarrow$ \$362.5 interest per year $\rightarrow$ 362.5/365 = .99 per day

.99 x (# of days between September 23, 2012 and January 3, 2018—1929) = **$1,909.71$**

$23.56 + $60.42 + $1,909.71 = $1,993.69

In light of the above calculations, the Court recommends that Plaintiff be awarded prejudgment interest in the amount sought, namely, **$1,993.69$**.

### *iii.    Liquidated Damages*

In addition, Plaintiff seeks liquidated damages in the sum of $2,530.54. Supp. Resp. II ¶ 3. Pursuant to 29 U.S.C. § 1132(g)(2)(C), Plaintiff is entitled to liquidated damages in "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid

contributions. 29 U.S.C. § 1132(g)(2)(C). On the other hand, Article Six, Section 6(f)(C) of the CBA provides that liquidated damages are to be paid at the same rate as interest. Moreover, Article Six, Section 6(i) of the CBA provides that the "[e]mployer shall be liable for an additional payment of twelve percent, or the percentage rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater, of the amount owing from the close of the day on which any such payment was due to the date when payment is actually made as and for liquidated damages." CBA, Article Six, Section 6(i).

Plaintiff's counsel explains that if liquidated damages were to be calculated at 12 percent annually, this amount would exceed the maximum rate of 20% of the unpaid contributions allowed by ERISA. Supp. Resp. I ¶ 2. As such, Plaintiff seeks liquidated damages at the rate of 20% of the unpaid contributions. Supp. Resp. I ¶ 2; Supp. Resp. II ¶ 3. The Court confirms the accuracy of this representation below with respect to each time period:

**Time Period: 7/18/2011-7/24/2011**

29 U.S.C. § 1132(g)(2)(C):

Greater of (i) $23.56, or (ii) damages under the plan not to exceed .20($155.93) = $31.18

CBA, Article Six, Section 6(f)(C):

$23.56

CBA, Article Six Section 6(i):

Greater of (i) $155.93(.12) x (7 years) = $130.98, or (ii) $23.56

Application of the formula set forth in the CBA for calculating liquidated damages would result in an award that exceeds the alternative methods set forth in 29 U.S.C. § 1132(g)(2)(C). As stated above, Plaintiff acknowledges this fact and, as a result, requests that damages be awarded in the amount of 20% of the unpaid contributions (since such a figure is greater than that which the alternative method under Section 1132 would yield). The Court agrees with this calculation and recommends that Plaintiff be awarded liquidated damages for the period of 7/18/2011 to 7/24/2011 in the amount of **$31.18**.

19

**Time Period: 1/23/2012-6/30/2012**

<u>29 U.S.C. § 1132(g)(2)(C):</u>

Greater of (i) $60.42, or (ii) damages under the plan not to exceed .20($412.86) = $82.57

<u>CBA, Article Six, Section 6(f)(C):</u>

$60.42

<u>CBA, Article Six Section 6(i):</u>

Greater of (i) $412.86(.12) x (7 years) = $346.80, or (ii) $60.42

Application of the formula set forth in the CBA for calculating liquidated damages would result in an award that exceeds the two methods set forth in 29 U.S.C. § 1132(g)(2)(C). As stated above, Plaintiff acknowledges this fact and, as a result, requests that damages be awarded in the amount of 20% of the unpaid contributions (since such a figure is greater than that which the alternative method under Section 1132 would yield). The Court therefore recommends that Plaintiff be awarded liquidated damages for the period of 1/23/2012 to 6/30/2012 in the amount of **<u>$82.57</u>**.

**Time Period: 8/13/2012-9/23/2012**

<u>29 U.S.C. § 1132(g)(2)(C):</u>

Greater of (i) $1,909.71, or (ii) damages under the plan not to exceed .20($12,083.98) = $2,416.79

<u>CBA, Article Six, Section 6(f)(C):</u>

$1,909.71

<u>CBA, Article Six Section 6(i):</u>

Greater of (i) $12,083.98(.12) x (7 years) = $10,503.05, or (ii) $1,909.71

Application of the formula set forth in the CBA for calculating liquidated damages would result in an award that exceeds the two methods set forth in 29 U.S.C. § 1132(g)(2)(C). As stated above, Plaintiff acknowledges this fact and, as a result, requests that damages be awarded in the amount of 20% of the unpaid contributions (since such a figure is greater than that which the alternative method under Section 1132 would yield). The Court therefore recommends that Plaintiff be awarded liquidated damages for the period of 8/13/2012 to 9/23/2012 in the amount of **<u>$2,416.79</u>**.

$31.18 + $82.57 + $2,416.79 = $2,530.54

Based on the above calculations, the Court respectfully recommends to Judge Hurley that

Plaintiff be awarded a total of **<u>$2,530.54</u>** in liquidated damages ($31.29 + $82.85 + $2,424.67).

#### iv.    *Attorney's Fees*

Plaintiff also seeks attorney's fees in the amount of $1,750.00.  *See* LaVelle Decl. ¶ 21.

Under Article 6, Section 6(f)(D) of the CBA, an employer shall pay the Funds "reasonable

attorneys' fees and costs of the action" in the event that formal proceedings are initiated to collect

delinquent contributions.  In addition to this contractual basis for the recovery of attorney's fees,

ERISA mandates the award of attorney's fees in delinquent contribution enforcement actions.

Pursuant to Section 502 of ERISA, "the court shall award the plan ... reasonable attorney's fees

and costs of the action, to be paid by the defendant. ...."  29 U.S.C. § 1132(g)(2); *LaBarbera v.*

*Clestra Hauserman Inc.,* 369 F.3d 224, 226 (2d Cir. 2004) (discussing the attorneys' fees

provisions under ERISA § 1132(g)); *Trs. v. FMC Constr. LLC,*No. 13 Civ. 923, 2014 WL

1236195, at *10 (E.D.N.Y. Feb. 12, 2014), *report and recommendation adopted by* 2014 WL

1236195 (E.D.N.Y. Mar. 25, 2014).  An award of attorneys' fees in the current circumstances is

therefore mandatory.  Both the Second Circuit and the Supreme Court have held that "the

lodestar method—the product of a reasonable hourly rate and the reasonable number of hours

required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R.*

*Co.,* 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood*

*Ass'n v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2007)).  The Court should determine the

"presumptively reasonable fee" by looking to "what a reasonable, paying client would be willing

to pay." *Arbor Hill,* 522 F.3d at 183–84.

 "[W]hether the calculation is referred to as the lodestar or the presumptively reasonable

fee, courts will take into account case-specific factors to help determine the reasonableness of the

hourly rates and the number of hours expended." *Pinzon v. Paul Lent Mechanical Sys.,* No. 11

21

Civ. 3384, 2012 WL 4174725, at *5 (Aug. 21, 2012), *report and recommendation adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).  These factors include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill,* 522 F.3d at 184. "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged."  *Finkel v. Omega Commc'n Servs., Inc*., 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983)).

To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits.  *See Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d. Cir. 2009); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983); *see also Joseph v. HDMJ Restaurant, Inc*., No. 09 Civ. 240, 2013 WL 4811225, at *19 (E.D.N.Y. Sept. 9, 2013) (internal citations omitted); *Pinzon*, 2012 WL 4174725, at *5.  Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour. *See Am. Fire & Cas. Co. v. Scott Elec. Servs., LLC*, No. CV153111, 2017 WL 395207, at *2 (E.D.N.Y. Jan. 9, 2017), *report and recommendation adopted*, 2017 WL 374728 (E.D.N.Y. Jan. 25, 2017); *Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL

22

4179943, at *3 (E.D.N.Y. Aug. 5, 2016); *Valdez v. H & S Rest. Operations, Inc.*, No. 14 CV 4701, 2016 WL 3079028, at *8 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016); *OneWest Bank, N.A. v. Denham* No. CV 14-5529, 2015 WL 5562980, at *12 (E.D.N.Y. Aug. 31, 2015), *report and recommendation adopted by* 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation Pension & Welfare Funds v. L&P Interiors, Inc.*, No. CV 14-3316, 2015 WL 5562316, at *13 (E.D.N.Y. Aug. 14, 2015), *report and recommendation adopted by* 2015 WL 5562340 (E.D.N.Y. Sept. 18, 2015); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09 Civ. 5251, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014) (collecting cases).

Some courts in this District have awarded a higher range of $300–$450 per hour for partners "in large law firms and for attorneys with extensive experience with the particular issues of a case" and "between $200 and $325 for senior associates and for attorneys with limited experience with the particular issues involved in the subject case; and $100-$200 for junior associates, or attorneys with little or no experience with the particular issues." *Johnson v. City of New York*, No. 11 CV 06176, 2016 WL 590457, at *5 (E.D.N.Y. Feb. 11, 2016) (citing *Sheet Metal Workers' Nat. Pension Fund v. Coverex Corporate Risk Solutions*, No. 09-CV-0121, 2015 WL 3444896, at *10 (E.D.N.Y. May 28, 2015); *see Small v. New York City Transit Auth.*, No. 09 Civ. 2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014)) (internal quotations omitted); *see Feltzin v. Ciampa Whitepoint LLC*, No. 15-CV-2279, 2017 WL 570761, at *2 (E.D.N.Y. Feb. 13, 2017); *Volpe v. Nassau Cty.*, No. 12 CV 2416, 2016 WL 6238525, at *6 (E.D.N.Y. Oct. 24, 2016); *Nicaisse v. Stephens & Michaels Associates, Inc.*, No. CV 14-1570, 2016 WL 4367222, at *4 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 14-CV-1570, 2016 WL

4275687 (E.D.N.Y. Aug. 12, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. CV 153693, 2016 WL 4384330, at *9 (E.D.N.Y. July 25, 2016), *report and recommendation adopted*, No. 15-CV-3693, 2016 WL 4384723 (E.D.N.Y. Aug. 16, 2016).

In *Konits v. Karahalis*, 409 F. App'x 418, 422–23 (2d Cir. 2011) (summary order), the Court of Appeals affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour.  A number of district courts within this district continue to rely, in part, on *Konits* in determining the appropriate range of fees.  *See Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds v. High Performance Floors, Inc*., No. 15-CV-2253, 2018 WL 334439, at *7 (E.D.N.Y. Jan. 8, 2018); *Morales v. B&M Gen. Renovation Inc.*, No. 14 CV 7290M, 2016 WL 1266624, at *11 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016) (relying, in part, on *Konits* and finding that "the prevailing hourly rate for partners in this district is between $300 and $400); *Incredible Foods Grp., LLC*, 2016 WL 4179943, at *3 (same).

To determine whether the number of hours spent by counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case."  *Fox Indus., Inc. v. Gurovich*, No. 03 Civ. 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).  A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation . . . ."  *Cho v. Koam Medical Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)); *Barbu v. Life Ins. Co. of N. Am.*, No. 12-CV-1629, 2015 WL 778325, at *4 (E.D.N.Y. Feb. 24, 2015).  Likewise, where counsel relies on vague / excessive entries or block billing

practices which make it difficult for a court to assess reasonableness, an across-the-board fee reduction is warranted. *Anderson v. Cty. of Suffolk*, No. CV 09-1913, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (recognizing that where "counsel relies on vague entries and block billing, courts are unable to review hours for reasonableness" and noting that "[c]ourts have imposed reductions as high as 40% based solely on vague billing entries"); *see Barbu*, 2015 WL 778325, at *5 (imposing a 33% reduction in total hours based upon vague entries and block billing).

In the instant matter, Plaintiff retained the services of Attorney William LaVelle, a member of LaVelle Law & Associates, P.C.; located in Patchogue, New York. *See* LaVelle Decl. ¶ 1. Mr. LaVelle was admitted to practice law in New York on January 12, 1988 and was subsequently admitted to the United States District Court for the Eastern District of New York on October 2, 1993. *Id.* Mr. LaVelle has been engaged in the practice of employee benefits law for approximately 23 years. *Id.* LaVelle Law & Associates billed Mr. LaVelle's time at an hourly rate of $250. Attorney's Fees Itemization, annexed as Exhibit G to Supp. Resp. I.

In light of Attorney LaVelle's background and experience, the hourly rate charged by LaVelle Law & Associates for Attorney LaVelle's services falls squarely within the parameters found reasonable by other courts in this District for ERISA delinquent contributions litigation. *See Bd. of Trustees of The United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 W.B.P. & A. Funds v. Akro Gen. Contracting, Inc.,* No. 15-04901, 2016 WL 6775467, at *9 (E.D.N.Y. Aug. 15, 2016) (approving an hourly rate of $250 for attorney in ERISA matter involving an unopposed motion for default judgment), *report and recommendation adopted sub nom. Bd. of Truestees of the United Union of Roofers v. Akro Gen. Contracting, Inc.*, No. 15-4901, 2016 WL 6779487 (E.D.N.Y. Nov. 15, 2016); *Flanagan v.*

*Marson Group, Ltd.,* No. 11 Civ. 2896, 2014 WL 4426277, at *6 (E.D.N.Y. Aug. 11, 2014), *report and recommendation adopted by* 2014 WL 4426276 (E.D.N.Y. Sept. 8, 2014) (recommending that Attorney Menechino's request for reimbursement at an hourly rate of $250 be granted as reasonable in an ERISA delinquent contributions case); *Trs. of Metal Polishers Local 8A–28A Funds v. Superior Maintenance, Inc.,* No. 12 Civ. 768, 2013 WL 8148381, at *3 (E.D.N.Y. Nov. 4, 2013) (recommending that $250 hourly rate for attorney with over 20 years of experience was reasonable and "in line with rates awarded in this area [ERISA] to counsel with comparable experience"), *report and recommendation adopted by* 2014 WL 1237195 (E.D.N.Y. Mar 25, 2014); *Trs. of Metal Polishers Local 8A–28A Funds v. Superior Scaffolding Servs. Inc.,* No. 12 CV 4251, 2013 WL 4095495, at *3 (E.D.N.Y. Aug. 9, 2013) (finding hourly rate of $250 reasonable for plaintiffs' counsel in similar ERISA default case).  Considering all of the factors in this case, including the nature and complexity of the issues, the Court respectfully recommends to Judge Hurley that the $250 hourly rate billed by Plaintiff's counsel be accepted and approved as a reasonable rate.

To support the request for attorneys' fees, Plaintiff has submitted contemporaneous billing records.  *See* Attorney's Fees Itemization, annexed as Exhibit G to Supp. Resp. II.  These records reflect that Plaintiff's counsel billed $1,750.00 for 7.0 hours of work at a rate of $250 per hour.  *Id.*  The contemporaneous time records describe the specific tasks counsel performed on behalf of the Plaintiff, the dates on which the tasks were performed, and the amount of time expended.  *Id.*  These records evidence the reasonableness of the 7.0 hours of legal services expended.  The Court does not find any unreasonable, excessive, or unnecessary time that warrants exclusion.  Since all 7.0 hours were appropriately included in Plaintiff's calculation, the

Court respectfully recommends to Judge Hurley that Plaintiff's counsel be awarded $1,750 in attorneys' fees.

### v.    Costs

Plaintiff also seeks costs in the amount of $535.00.  *See* LaVelle Decl. ¶ 21.  ERISA plainly provides for the reimbursement of costs incurred.  *See* 29 U.S.C. 1132(g)(2).  In addition, Article 6 of the CBA also provides for the recovery of reasonable costs incurred by the Funds to be paid by the employer in the enforcement of a delinquent contributions action.  CBA, Article 6, Section 6(f)(D).  Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients."  *Trustees of New York City Dist. Council of Carpenters Pension, Welfare, Annuity, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Funds v. Access Sols. Grp., LLC*, No. 17 CV 4679, 2017 WL 5256765, at *4 (S.D.N.Y. Nov. 13, 2017) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir.1987)) (internal quotation marks omitted); *Sheet Metal Workers Nat'l Pension Fund v. Evans,* No. 12 Civ. 3049, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014); *Trs. of Local 7 Tile Industry Welfare Fund v. Amarko Marble & Granite Co.,* No. 13 Civ. 2779, 2014 WL 1622098, at *11 (E .D.N.Y. Apr. 22, 2014) ("Generally, reasonable costs may be recovered by the prevailing party in an ERISA action." (citing 28 U.S.C. § 1920; 29 U.S.C. § 1132(g)(2)(D); Fed. R. Civ. P. 54(d); *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 290–91 (E.D.N.Y. 2010); *Morin v. Nu–Wav Plastering Inc.*, No. 03 CV 405, 2005 WL 3470371, at *4 (E.D.N.Y. Dec. 19, 2005)).

The costs incurred by Plaintiff are reflected in counsel's Itemization report annexed to Supplemental Response I.  The costs consist of the $400 court filing fee and the $135.00 process server fee.  Plaintiff has provided itemized receipts for these expenses. *See* Exhibit C to Supp.

Resp. I.  The Court finds that these expenses are reasonable and should, therefore, be reimbursed. Accordingly, the Court respectfully recommends to Judge Hurley that Plaintiff be awarded total costs in the amount of $535.00.

### vi.    *Injunctive Relief*

Plaintiff seeks judgment in accordance with ERISA Section 502(g)(2)(E) permanently enjoining Odessy from failing or refusing to pay contributions it owes.  Compl. ¶ 15.  Section 502(g)(2)(E) provides that a Court may award "such other legal or equitable relief as the court deems appropriate." A court may issue an injunction if the plaintiff can show "irreparable harm should the injunction not be granted," and "the absence of an adequate remedy at law."  *La Barbera v. Fed. Metal & Glass Corp*., 666 F. Supp. 2d 341, 350 (E.D.N.Y. 2009) (citing *King v. Nelco Indus., Inc*., No. 96-4177, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996); *LaBarbera v. David Liepper & Sons, Inc*., No. 06 CV 1371, 2006 WL 2423420, at *6 (E.D.N.Y. Jul. 06, 2006)).

The instant case is strikingly similar to *Gesualdi v. Interstate Masonry Corp.*, No. 11 CV 958, 2011 WL 7032900, at *11 (E.D.N.Y. Nov. 16, 2011), *report and recommendation adopted*, No. 11-CV-958, 2012 WL 27441 (E.D.N.Y. Jan. 4, 2012). Both the plaintiff in *Gesualdi* and Plaintiff here sought/seek an Order permanently enjoining the defendant employer from further violating the CBA.  Like the plaintiff in *Gesualdi*, Plaintiff here fails to explain the necessity of a permanent injunction and even appears to have abandoned its request for injunctive relief in its supplemental submissions to the Court.  The court in *Gesualdi* held that "[w]ithout allegations of more pressing need or a lack of legal alternatives, the Court cannot conclude that a permanent injunction is necessary to prevent irreparable harm and that there exists no adequate remedy at law." *Gesualdi*, 2011 WL 7032900, at *11.  The Court here, too, finds that Plaintiff here has

failed to adequately support its request for injunctive relief.  Accordingly, this Court respectfully recommends to Judge Hurley that the request for injunctive relief be DENIED.

**V.     CONCLUSION**

For the foregoing reasons, this Court respectfully recommends to Judge Hurley that a default judgment be entered against Defendant Odessy Construction Corporation.  The Court further recommends that Plaintiff be awarded the following damages:

- $12,652.77 for unpaid contributions;
- Pre-judgment interest on unpaid contributions through January 3, 2018 in the amount of $1,993.69;
- Liquidated damages in the amount of $2,530.54;
- $1,750 in attorneys' fees; and
- $535.00 in costs and disbursements.

Total: **$19,462.00**.

The Court also recommends that Plaintiff's request for a permanent injunction be DENIED.

**VI.     OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *Beverly v. Walker,* 118 F.3d 900, 901 (2d Cir.1997), *cert. denied,* 522 U.S. 883 (1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

**Plaintiff's counsel is directed to serve a copy of this Report and Recommendation on Odessy forthwith by overnight mail and first class mail and to file proof of such service on ECF promptly.**

SO ORDERED.

Dated: Central Islip, New York
February 9, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge

30